Please be seated. Good morning, Your Honors. May it please the Court, my name is Sandy Svetko from the Coghlan-Stoya firm in San Francisco, representing the plaintiff appellant, James Drimmer. I'd like to save three minutes for rebuttal, if I may. All right. You realize the time shown is your entire time, so when it counts down to three, you have three minutes left. I'll stop. All righty. A panel of this Court granted the plaintiff's Rule 23-F petition to have an interlocutory appeal in this case from a district court order denying class certification. And on appeal in the petition, the petitioner narrowed the scope of his claim for class certification. He removed the negligence causes of action. And he removed those because they caused the individual causation issues that drove the district court to conclude that those individual causation issues precluded the negligence claims. The problem is... I was going to say it caused another problem, though. The problem is he used the negligence analysis. He moved with that negligence analysis into the false advertising and warranty claims, and he said there were going to be individual causation and reliance issues with the false advertising and implied warranty claims. And that's just not true, and that's legal error. That drives the standard of review here. Standard of review is critical here, as it was in the last case. Ordinarily, the standard of review on a denial of class certification, as we all know, is abuse of discretion. And you'll hear from opposing counsel about discretion. But underlying the overall decision to certify are fact and legal questions, each of which is driven by their own standards of review. Clear error for factual errors and legal error, de novo review, for the legal errors. The legal error was to apply the individual causation and reliance analysis properly applied by Judge Wayland on negligence to the false advertising and warranty. Now, I think the thing to do... Well, why wouldn't there be individual questions on the warranty issue? Because you have to show on the warranty, don't you have to show when the warranty was breached? Are you saying it was breached from the very beginning? Well, let me see if I can explain that. The Hicks case, which is cited in our reply brief and opening brief, kind of describes the standard for showing when a product fit for its normal use. And under Hicks, you have to show an inherent defect that's substantially likely to occur. And that's what we show here. The studies from the Metropolitan Water District all show that chlorine in these tablets corrodes the rubber and plastic in the flappers, causing running of the water and leakage. If you ever put one of those tablets in your toilet, and I have, it's really hard to sleep when the water keeps running in your toilet in the next room. It's even worse when the leak hits the floor. So we have these studies. We have Dr. Kresge's deposition. He did one of the reports. But didn't that study have a continuous flow that's a lot different than is used by consumers? I mean, I don't know that. That's a great question for trial. We're at class certification. The question at class certification, Judge, is, is this claim capable of proof at trial with evidence common to the class? The studies. How could the evidence be common to the class if people have different flow? You know, I have a house that's sitting empty, and the toilet is almost never flushed. So how can you have, you know. Let's go back to the representation on the label of the product. The product says, not harmful to toilets. Not harmful to toilets. Safe for toilets. That's an absolute, unconditional assurance on every label. From the studies we know, there are major and minor leaks in more than a majority. I think if you look at the excerpt of record, page 357 and 358, there's a chart. And it lists 14 flappers. And of the 14, eight of the 14, a majority of flappers had major or minor leaks from the use of these chlorine tablets. So when does the cause of action occur? When does the, when is the implied warranty of merchantability breached? It's breached on sale, Your Honor. Just by selling something that isn't what you say it is. Exactly. Not by causing the damage. Immediately damaged for the price. And that's what this, look, we're not looking for toilet damages. That's, that's where the problem is, Judge. The toilet damages are individual to the, to the, to each member of the class. But the purchase price is across the board for both false advertising and breach of warranty, which are. So all you're seeking in the class certification is a class of people who purchased this. And any other damage to the property would be resolved how? Once you certify a class, you provide notice and opt out. The notice alerts through the computer, through publication, alerts the consuming public that between 2002 and 2006, there were these tablets that had the potential to damage toilets. There was a high risk of it in most toilets. It was an inherent defect, making the advertising false. And that they could individually show negligence, either in small claims court if they wished, by filing a claim with the company if they wished. But the point is, both of the statutes that we're seeking to enforce deal more with deterring unfair competition. We have a California headquartered company. The admissions in the records at pages 87 and 88 show that the, that the label was, was substantially created in California. So you want to say to a California business, stop putting labels out that are false and misleading. Drimmer said if he had known, if he had known that his toilet was at risk, he would not have bought the product. The judge was concerned that there was no class-wide evidence that, of the concern. 4,000 complaints in these metropolitan water district studies are plenty good class-wide evidence. Counsel, are you, are you seeking certification for the California-only class at this point? I'm seeking a nationwide class, and I'll tell you why. I'll tell you why. Look, there are two standards. There's a constitutional standard under the Phillips Petroleum case, and there's a choice, choice of law standard. For choice of law, you look to California. Let's look at the Constitution. To satisfy the Constitution, you've got to have substantial contacts in California. He was citing the California statute, so I thought that meant you were seeking to certify only a California. California, no, a nationwide class applying California law to the entire class. On both presidential and the U.C.L. Anderson, definitely? Yes, yes. Our fallback position is a California-only class. But I'm here to say to you, look, there, we satisfy both the constitutional and the choice of law standards for a nationwide class. How could, go ahead. I want to change the. Let me ask this question before I change it. All right. How would a nationwide class fit under the California U.C.L. and Song-Beverly? Well, first you have to analyze the contacts. Whether to have a nationwide class depends on are there sufficient contacts in California to satisfy the Constitution and to satisfy a California choice of law rules. You stay with the forum's choice of statutes if you have minimum contacts. The contacts are the company is headquartered here, so the main purpose of these statutes to deter this kind of false advertising and breach of warranties is present. They created the label here. It's present. Twelve percent of their national sales are in California. No other state has that many sales. And to get the attention of the company through this, and there's no state would have any countervailing, no state is interested in having false advertising or breach of warranties. There would be no conflict. The best we can do under a class certification is to seek the purchase price. Look, we'd love to ask for more money, but class certification law doesn't allow it. I guess I want to change the emphasis here because I, too, saw that the judge was using somewhat of a negligence standard as he applied across all the claims, but there are some parts of what he said that have nothing to do with that. For instance, that that he said, this particular person is an inadequate class representative. Again, we're on an abuse of discretion standard, and he suggested, as I understand it, that Drimmer was not pursuing all the available remedies. He was only seeking restitution, which you've admitted. He and the attorney were close friends. They had a landlord-tenant relationship. Court was concerned about the close relationship. Now, there are courts which might go the other way, but I'm on an abuse of discretion standard here, Counsel. How do I say that's an abuse? Well, first of all, Your Honor, with respect, it's not an abuse of discretion standard in this case, and I'll tell you why. He said that the plaintiff that you have that says— Well, Hanlon and Murray? I don't think Hanlon and Murray addressed this particular case. Absolutely. Absolutely, Judge Smith. Step back a second. If negligence and the damages attendant to negligence cannot be certified because of individual causation issues, why is Mr. Drimmer at fault for saying, okay, I'll concede that. I'm not going to seek those damages. He's absolutely consistent with class certification law. He can't get a class for negligence damages, so why is he at fault for abandoning negligence damages, Judge Smith? He's not. And so it was legal error for the district court to hold him at fault for abandoning certification and damages for damages he cannot get through a class. But could he seek damages through the UCL or through the Song-Deverly? Pardon? He could not, I think, seek damages. Could he through the UCL? Through UCL, he can seek restitution. Which would be the price of the tablet. Exactly, but that's also – Song-Beverly, you can't get damages. Yes. Yes, you can't? Yes, but the damage is the price of the – Okay, damage to the toilet. You can't get on either – You can't get damage to the toilet. That's exactly right. So, Judge Smith, the long and the short answer to your question is, it was legal error underlying the overall discretionary call, making the discretionary call an abuse of discretion. That wasn't his only reason. Yes, well, but. He said that he had three reasons. Yes, but. He would not have found the plaintiff inadequate, except for all of those reasons being in the mix. No one alone was enough. No two alone was enough. He said you had to have all three. I sent him the record that he said all three were required. I'm delighted you asked. And you know what, you have three minutes left, so why don't you find that while you're – No, I think I want to tell you. Okay. Excerpt of record 553, while any one factor would not disqualify Drimmer, the combination of personal relationship, landlord-tenant, and inexplicable interest in pursuing other remedies. So he said it at the top of the – But that doesn't say that he asked to have all three to make it. He just says one wouldn't do it, but since I've got three here, that's enough. Well, you just said maybe one should not be something we look at, but the other two are still outstanding. Well, let's talk about the other two. I'll continue because I have your attention now, so I want to get this. Where's the conflict? The judge found the conflict in his decision to abandon the rest of the class because this was the principal – Well, that isn't the only conflict. Okay. Now, there is no case that says a landlord-tenant relationship or friendship is a conflict. All right. If there's no case that says one way or the other, the judge can exercise his discretion in determining whether or not that's – Don't shake your head at me. It doesn't do you any good to shake your head. Wait until she gets through. The bottom line is that the close relationship could potentially jeopardize the interests of the class because he felt like they were too close, and therefore that attorney should not be the one or that plaintiff should not. They should get another plaintiff to come in. Well, that, of course, remedy was never afforded to the – Well, I understand that, but I guess you're going to have another guy who comes in and says – No, but that's – Look, Judge Rawlinson, if I misspoke, to make this clear, the only kinds of conflicts that have made a difference in the cases have been familial conflicts, not friends. There's no case that friends are a disqualifying conflict. Well, that's the problem. We're not here on law. We're here – a judge made a decision, and he's making this decision that they're too close, and he said three reasons. But they're interrelated. He said, look, the friendship led to his abandoning the restitution claims. Well, if the substance of the conflict is abandoning claims that he didn't have anyway, so how did the conflict affect anything? Now, what about the fact that the judge felt that the class representative was not familiar enough with the case? Well, I looked at the depositions on that. He met with the lawyers 20 to 50 times. He read the complaint. He read the – he assisted in discovery. He read the motion papers. He didn't know the size of the class, and we won't know that until we publish notice. All we know is there are 27 million products sold. He didn't know the particular claims that were – but no case has held a class plaintiff to that level of knowledge. So the – He's a lawyer himself. Drimmer is a lawyer himself, correct? He was a law clerk at the time and now has a litigation support business. But he's not held to the level of knowledge that I am, and certainly how could he be sacrificing the class when he has hired competent counsel to aggressively pursue this case on behalf of the class with the vigor that has been shown in this case? Is it you? Is it you, this good, competent counsel? No, it's the trial counsel. Then I'd know whether it was competent or not. I see I have 30 seconds left. No, you're over 30 seconds actually, but can I ask one quick one? Is there any reason why we should wait for the California Supreme Court in the Prop 64 cases? You know, first of all, Mr. Drimmer was damaged, so he'll have standing. The question of whether all the class members have to have damage or only the class rep has to have damage. Well, I'm not sure if that is in the next round of cases. If that is, it may not hurt to wait, but that's your call. All right, thank you, counsel. Counsel, you've exceeded your time, but we will give you a minute or two for rebuttal. He said you would stop at three, but I won't hold you to that. He changed his mind. He shook his head, remember. Why are you giving him extra time? Please proceed, counsel. Good morning, Your Honors. May it please the Court. Drimmer absolutely failed to meet his burden to prove by the preponderance of the evidence that he established all of the requirements of Rule 23. Why? Because he failed to present any evidence, not one shred of evidence, to demonstrate that WD-40's products are unsafe, harmful, or unfit. Are we meant to determine the merits of the case on class certification? It's not a merits decision because the district court is supposed to look, and it's their burden, at whether or not they're going to be capable of proving on a class-wide basis the allegations of their complaint. And their underlying issue, the whole thing is founded upon this is a misrepresentation. Well, that means there's a falsity. So they have to show a falsity at some point, and they have to show the court how they're going to establish that. Well, he said they were going to show it through the water studies and the fact that the misrepresentation is playing on the packaging. Right. And they rely on those Metropolitan Water District tests, but if you look at the record, those tests tested a product that is not at issue in this lawsuit. The name was 2,000 Flushes, but it was a totally different, it was a plastic canister, it was a calcium hypochlorite product with 100% chlorine. The tablets now, which was since 2001, are only 50% or 55%. Does that cause merits issues? No, because he has to show that he's going to be capable of proving it, and all of the evidence that he's submitted is absolutely irrelevant. And even if it was bordering on a merits-type decision, the Third Circuit recently came out with the in-ray hydrochloric, excuse me, the in-ray hydrogen peroxide litigation, which while it's Third Circuit is being hailed by many, many journals and organizations as being the most important class certification case in the last decade. And what that case says is it would be an errant law for the court not to consider merits issues. They have to make factual determinations in order to establish, in order to conclude whether or not the Rule 23 requirements have been met. And here the district court, with an absence of evidence, was totally within his discretion to make the conclusion that there wasn't going to be any legal harm here, or that there wasn't going to be materiality, or that he wasn't entitled to an inference of reliance. What is your view about the California Supreme Court's Prop 64 cases? Is there anything in those that could affect this case? Absolutely. The in-ray tobacco 2 cases, which were just, the oral argument just happened in March, so we're waiting for a ruling in the next six weeks. Well, 90 days from March 3rd, no? Right, so by June 1. If those are affirmed, meaning that every class member will have to show their individual injury, in fact, individual reliance, well, then this case is done. I mean, we win hands down. If they... If injury is only restitution and not damages, then there would be no need to show individualized damages, even under that interpretation of Prop 64, would there? Well, it's dealing with the reliance issue, which is... Well, one of those three cases, McAdams, says there's a presumption of reliance, so I guess it kind of depends on how all three of them come out. Right, and that's actually really an interesting point, because the judge here, not applying negligence standards, actually gave them the benefit of the doubt and assumed that reliance could be inferred in theory if it had been shown. But in order to get an inference of reliance under the UCL, you have to show both a misrepresentation and materiality. And materiality in this case means that the representations induced the purchase. Well, they can't even show that the representations induced Drimmer's purchase. Was that a subjective standard or an objective standard? It's an objective standard. It's a reasonable... Objective, so it's the reasonable person. Each person doesn't have to get up and testify, I bought this because... Exactly, and since they didn't present any evidence showing that people buy the product because it says it's safe, I mean, maybe they buy the product because it says 2,000 flushes and they want to keep their toilet clean for four months. Without showing any evidence that the reason why they buy it is because of safety, the court was within his discretion to determine, well, maybe they buy it for other reasons. Maybe they like the scent. Maybe they are willing to weigh and balance and decide, okay, even if it's going to impact my toilet, I'd rather replace a $10 flapper every five years, four years, whatever. Then have to hire a cleaning person every week or have to, you know, in order to have a clean toilet. People might make that decision, and that was within the district court's discretion to do. Can you explain the district court's use of this unwillingness to prove individualized damages as a negative for class certification? In other words, if it's the case that only restitution can be sought under the UCL and Song-Beverly, does the individualized damages question play into that at all or should we just disregard that? Damages as opposed to liability? No, damages as opposed to restitution. In other words, the district court's one of the reasons for not certifying the class and not allowing Drimmer to be the class rep was because he waived damages or wasn't going to seek individualized damages in terms of the damage to the toilets. And I'm wondering whether that still holds if we're talking only about the UCL and the Song-Beverly, under which I think he couldn't get those damages anyway. Right, and certainly that was under the adequacy standard. There were multiple reasons why he thought he was inadequate and waiving those damages was only one of them. But you would agree that's no longer relevant? And I would agree that that's no longer relevant,  There were other adequacy determinations, obviously, that affected that determination. Would the failure to seek damages under the UCL and the Song-Beverly disadvantage the class members in any way? In other words, would there be res judicata that they could no longer seek their damages or anything of the sort? Res judicata is certainly an issue that we would need to be concerned about. The district court considered that issue as well and decided that it was not going to be a factor that he was going to consider. If people opt out of the class, then you wouldn't have a res judicata issue? Certainly, and the court was aware of that. But the court was concerned that if people are opting out and seeking their greatest damages alternatively in other forums, then we're creating a massive management problem. We already have a huge certification, a huge class, and now we're having to send the people who have been the most damaged out to get their relief somewhere else, which is just a huge burden on the court, is what the discretionary decision was. I was confused about the timing issue. The judge said, I don't know if it was on the record or in a written thing, something about there's a one-year implied warranty and it took five months before this guy's toilet to go bad, so that's a problem. And I'm thinking five months is less than one year. Even if one year was the point, what did the five months have to do with it? Because the implied warranty has a requirement that unfitness must be shown between 60 days and one year from the time of purchase, and so the judge recognized that every single individual putative plaintiff is going to have to prove within that period of time that there was an unfitness. And the district court thought that, all right, we can't establish by class-wide proof that there's a defect here, i.e. that there's some sort of a misrepresentation. So that's going to be an individualized inquiry for each plaintiff. So Drimmer is okay because he's five months, but the idea is if somebody else's didn't go bad until 13 months, counsel argues that the cause of action arises at the sale because it's an implied warranty of merchantability. That is, when you buy it, you're told something, and if that's not true, your cause of action has arisen right then. What would you say to that? Simply that in order for that to be a valid point, there has to be a falsity, and they have to be able to prove a falsity at a later date, arguably. But we're under implied warranty of merchantability, really, with Song-Beverly, and I don't know that there's a falsity involved in that at all. It just has to be fit for the ordinary purpose. And if he has evidence of fit for ordinary purpose, and then I read Hicks, and it says, Inherent defects certain to result during useful life, which says it occurs at time of sale, really, if it's certain to result in useful life, then I'm still having a tough time how we apply this standard in a Song-Beverly situation. And that's a good question. But Hicks, as you read, requires that the failure has to happen within the warranty period so long as it contains an inherent defect. And here, when we're talking about defect, we're talking about this alleged misrepresentation. So we go back to the original point, can they demonstrate falsity? If they can demonstrate falsity... Not a falsity, an inherent defect. That's different than a falsity. Well, in this case, it's one and the same, because they're saying we say the product's safe, they say it's per se not safe. Well, how are they going to demonstrate that? The only way they're going to demonstrate that is to show a defect. Well, but they don't necessarily have to. I guess I need to get some help here, because as I understand the normal warranty of merchantability has nothing to do with what you've said or what you haven't said or what you've advertised or what you haven't. It's implied. And the fit for the ordinary purpose comes whether you say it or whether you don't. It has nothing to do with falsity. And therefore, if they have evidence that it wasn't fit for the ordinary purpose, and the bottom line is it occurs when it's sold, then I don't understand why what each customer has or doesn't have has any relationship to it. But they don't have evidence that it's unfit for its purpose. Well, all you're saying is they can't rely on Metropolitan Water District study, right? They certainly can't rely on that, because that didn't test any of our products. That's a merit issue, though. That's the difficulty I have with your argument, is whether or not they can or can't rely on that study is something that would have to be determined after comparing the product that's sold now with the product that was the subject of the Water District studies. And that's not something that you determine when you're trying to certify a class or not certify a class. I see your confusion with the issue or your caution with the issue. Better caution than confusion. Exactly. It is Drimmer's burden to show that he's going to be able to meet the requirements. And merits-based decisions are okay. In this hydrogen peroxide litigation, the court said, Deciding the issue calls for the district court's rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove a trial. Right. But the ultimate determination as to whether or not that actually is the appropriate study is not something that can be done at the stage where you're trying to certify the class. Because then what you're proposing is a mini trial on the merits before you certify the class. No, I'm not. I'm just proposing that the district court has to look at the evidence. It has to weigh and balance it and make decisions to see if the burden was met. This is not a standard of a 12B6 case where you take the pleadings as true. You have to look and see what's going to be there. And if they say we're going to prove this with this evidence, and that evidence per se does not say what they say it says, then they are not going to be able to prove it one way or another, but certainly not on a class basis. And it's their burden to show that they can. Are you saying that the – sorry. You go ahead. Always to the lady first. What would you – this is kind of changing the subject, but what would you say about a nationwide class versus a California class? And more specifically, if we were to say that the court could certify a nationwide class, could the court then fall back on a California class if it turned out that the substantive law said you can't apply California consumer protection laws to sales in other states? Well, first of all – In other words, could we err on the side of allowing the nationwide class that would still give the court the opportunity to go back to the California class if the substantive law required it? Well, there's a lot of reasons why the nationwide class won't work, and part of that is choice of law analysis that he was going through. The consumer protection laws are actually different state by state, and they're materially different. Right. But he would only be trying to impose the California ones. Now, maybe those can't be imposed in other states, and in that case – Correct. They can't be. But he isn't asking, I don't think, to apply the laws of other states' consumer protection acts in other states. He's not asking that. But constitutionally, those laws have to be applied if the states have a greater interest in protecting their consumers than California does. And here you've got the products designed out of state, the labels made out of state, 90% of the class out of state, injury occurring at the point of purchase. So that's going to be at other states. So all of the witnesses, the evidence, the plumbers are going to be out of state. So there's not a very strong nexus with California, notwithstanding that that's where the headquarters is. So – and then when you add on top of that, the predominance issues that the district court was within its discretion to find, and the commonality and the adequacy, there are multiple reasons why this should not go forward as a nationwide or a California class. We had a question just here. Well, my question had to do with the standard. I mean, I've read all these cases, and I've been on a district court looking at what the class representative has to prove in order to get a chance to go to class. And it seems to me that the standard you're suggesting is a tougher standard than I've seen before. Is it in the most recent cases? I mean, I've never seen a judge have to come up with, well, he's sure to have a claim here. I mean, the classes, in fact, the cases that I've read trying to make those same old decisions, I realize it's only in Idaho, not here. But nonetheless, those same decisions, I don't think he has to have – well, cite me your best case for it. He has to have some clear way – I mean, I'm not talking about probable cause here. I'm talking about something you're suggesting. He has to have a claim proved. And you're arguing about evidence. You're arguing whether the Metropolitan Water District is really sufficient evidence to come to that. That's something I think, as sharp as you are and he is, that you could make those in front of the jury. But we're talking about evidence, and we're not going to go down to whether the evidence is going to be available or not in my book. Well, the district court has the authority and the discretion to make the decision about whether or not this is going to be properly maintained as a class action. District court decided it wasn't here after looking at the evidence from both sides. And that was his call. Well, but I understand that. But as to the song Beverly, really, he doesn't give me a lot of help on that. He's talking about negligence. Now he's changed the ball on him. Poor guy. And now we have an implied warranty. Sure. But even if you don't think that that analysis was very comprehensive, you still have to look at the Rule 23A requirements, commonality and adequacy, which have nothing to do with the negligence standard. And he determined that that wasn't met. And the superiority. And if I may take just a moment to conclude. She's the ball. Even if everything that Drimmer says is right, even if the district court applied the wrong law or relied on legally improper findings, what we are left with is a 27 million person class, 90% of which are out of California, or alternatively, a 3 million person class. That's not nearly as big as the Walmart class. Well, the question is, how is it an abuse of discretion for the judge to determine that that's not manageable for him or for the district court? We understand your argument. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Long before the Third Circuit decided hydrogen peroxide, this circuit in hand and recognized that at class certification, you have to make some minimal look into the merits to see if the case is capable of being tried as a class action, that there will be common evidence and common issues. We've shown through the testimony of Dr. Kresge and his deposition who did one of the studies and all of those studies that go from 98 to 2004 that there is class-wide evidence available. On the common issues, all of the issues for false advertising and breach of warranty are common. One, is the label false or not? Two, is it an inherent defect? Three, reliance. Reliance is, would a reasonable consumer likely be deceived? Not whether Mr. Drimmer read the label or 27 million class members read the label. Would a label that said, not harmful to toilets, make a difference? Drimmer said it did. There are 4,000 objective complaints in the record. And the best evidence, perhaps, is Judge Whalen's statement about this in his denial of the motion to dismiss. Excerpt of record 10. It is a reductio ad absurdum to suggest that a product which destroys the very toilet is intended to clean and disinfect. It is fit for its intended use. So the judge found it himself. And so, when he found that consumers might prefer a pleasant smell, he was contradicting himself. And that's a legal error. Because his own conclusion was, as a reasonable consumer, that no one would choose a pleasant smell at the risk of $300 worth of toilet damage. It's not reasonable. So the label itself, the studies, all go to show common issues of fact and common evidence. And I think, with respect to adequacy, I want to finish up on that point. Once you take a leg off of the chair that the judge ruled on, on adequacy, and it's the major leg and it infects all the other legs, then he abused his discretion. And if you say, well, that just takes one away, he still didn't. Not so. He still abused his discretion on the record he made. The worst you can do, in terms of our position, is remand it to him to take another look. But it seems to me you have to find that he abused his discretion because the major reason for his finding Mr. German inadequate is no longer present in the case. All right. Counsel, you've exceeded your time. Thank you. Thank you to both counsel. The case just argued and submitted for decision by the court. The next case on calendar for argument is Giuffredo v. Maccaro.
judges: Rawlinson, Smith N. R., Wilken